1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SUMITH SAMARAKOON,                    No.  2:25-cv-1271-SCR

12                 Plaintiff,

13          v.                              ORDER

14    JUDGE RICHARD DISTASO, TRACY
      TOLEDO, YVETTE ALLIVATO,
15    JENNIFER TERCERRO, and LEA MAY
      SARTE,
16
                   Defendants.
17

18

19          Plaintiff is proceeding pro se in this action, which was accordingly referred to the

20    undersigned.  ECF No. 1.  Plaintiff has filed a motion for leave to proceed in forma pauperis

21    ("IFP") and submitted the affidavit required by that statute.  ECF No. 2; *see* 28 U.S.C. §

22    1915(a)(1).

23          The motion to proceed IFP, ECF No. 2, is granted.  However, in screening Plaintiff's

24    Complaint, as required by 28 U.S.C. § 1915(e)(2), the Court finds that Plaintiff has failed to

25    adequately state a claim as to all but Defendant Yvette Allivato.  The Court will grant Plaintiff an

26    opportunity to amend the Complaint so it states cognizable claims against other Defendants.

27    /////

28    /////

                                         1

1          **I.      LEGAL STANDARD**

2          A court may authorize a person to proceed in an action without prepayment of fees if that

3   person "submits an affidavit that includes a statement of all assets…that the person is unable to

4   pay such fees or give security therefor."  28 U.S.C. § 1915(a)(1).  The federal IFP statute,

5   however, requires federal courts to dismiss such a case if the action is legally "frivolous or

6   malicious," fails to state a claim upon which relief may be granted or seeks monetary relief from

7   a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  In reviewing the

8   complaint, the Court is guided by the requirements of the Federal Rules of Civil Procedure.  The

9   Federal Rules of Civil Procedure are available online at www.uscourts.gov/rules-policies/current-

10  rules-practice-procedure/federal-rules-civil-procedure.

11         Under the Federal Rules of Civil Procedure, the complaint must contain (1) a "short and

12  plain statement" of the basis for federal jurisdiction (that is, the reason the case is filed in this

13  court, rather than in a state court), (2) a short and plain statement showing that plaintiff is entitled

14  to relief (that is, who harmed the plaintiff, and in what way), and (3) a demand for the relief

15  sought.  Fed. R. Civ. P. 8(a).  Plaintiff's claims must be set forth simply, concisely and directly.

16  Fed. R. Civ. P. 8(d)(1).  Forms are available to help pro se plaintiffs organize their complaint in

17  the proper way.  They are available at the Clerk's Office, 501 I Street, 4th Floor (Rm. 4-200),

18  Sacramento, CA 95814, or online at www.uscourts.gov/forms/pro-se-forms.

19         A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

20  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  In reviewing a complaint under this standard, the

21  court will (1) accept as true all the factual allegations contained in the complaint, unless they are

22  clearly baseless or fanciful; (2) construe those allegations in the light most favorable to the

23  plaintiff; and (3) resolve all doubts in the plaintiff's favor.  *See Neitzke*, 490 U.S. at 327.

24         The court applies the same rules of construction in determining whether the complaint

25  states a claim on which relief can be granted.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (court

26  must accept the allegations as true); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (court must

27  construe the complaint in the light most favorable to the plaintiff).  Pro se pleadings are held to a

28  less stringent standard than those drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520

1   (1972).  However, the court need not accept as true conclusory allegations, unreasonable

2   inferences, or unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618,

3   624 (9th Cir. 1981).  A formulaic recitation of the elements of a cause of action does not suffice

4   to state a claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *Ashcroft v. Iqbal*,

5   556 U.S. 662, 678 (2009).

6       To state a claim on which relief may be granted, the plaintiff must allege enough facts "to

7   state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has

8   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

9   reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

10  678.  A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity

11  to amend, unless the complaint's deficiencies could not be cured by amendment.  *See Akhtar v.*

12  *Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012).

13                    **II.        COMPLAINT AND MOTION**

14          **A.  <u>Complaint's Factual Allegations</u>**

15      Before the events underlying the Complaint, Plaintiff was the primary caregiver of his

16  daughter J.S.  ECF No. 1 at 1.  He cared for her and homeschooled her for ten years without

17  abuse or neglect, notwithstanding a baseless Child Protective Services ("CPS") investigation

18  which was closed on September 13, 2023.  *Id.* at 2, 4.  The "false and retaliatory" claim

19  underlying that investigation was submitted by Allivato, a reunification therapist; Lea May Sarte,

20  Plaintiff's ex-spouse; and Tracy Toledo, Sarte's counsel in custody proceedings for J.S.  *Id.* at 3-

21  4, 7.  All three are named as defendants in this action.

22      In August 2023, during Plaintiff's illegal eviction from his family home of 12 years, a

23  CPS worker entered with two police officers to privately interrogate J.S. without a warrant or

24  exigent circumstances.  *Id.* at 5.  Later that month, a law enforcement officer visually inspected

25  J.S. for signs of abuse, without consent or a warrant.  *Id.* at 5-6.  The Complaint alleges that both

26  inspections violate the Fourth and Fourteenth Amendments.  *Id.* at 6.

27      The Complaint then alleges that on September 25, 2023, Defendant Judge Richard Distaso

28  of the Stanislaus County Superior Court falsely asserted that CPS claims were still pending

against Plaintiff. *Id.* at 5. When Plaintiff told him that the CPS had closed the investigation on September 13, Judge Distaso falsely stated that a new claim had been submitted. *Id.* Plaintiff was therefore ordered to surrender his daughter to the Modesto Police Department without a warrant, exigent circumstances, or a judicial finding of unfitness. *Id.* at 5.

During Plaintiff's October 26, 2023 supervised visit to J.S., she said she loved him and asked when she could come home. *Id.* at 6. Melissa Love and Melissa Hale described the visit as "safe, positive, and emotionally affirming." *Id.* Despite Allivato not being present, she falsely alleged in a November 2023 treatment summary that this visit traumatized and emotionally harmed J.S. *Id.* at 6, 130-131. This summary was used to sever Plaintiff's contact with J.S. in an *ex parte* motion, where Plaintiff received no opportunity to refute the allegations. *Id.* at 6.

On December 5, 2023, Plaintiff hand-delivered a redacted copy of the September 13 CPS closure report to defendant Jennifer Tercerro, a Family Court Services ("FCS") evaluator and the court-appointed Child Custody Mediator in Plaintiff's case. *Id.* at 4-5. The Complaint alleges that this report disproved Judge Distaso's September 25, 2023 assertion that claims against Plaintiff were still pending. *Id.* at 5. The court did not acknowledge the closure report. *Id.*

On January 10, 2024, Tercerro interviewed J.S. about text messages that Plaintiff and J.S. had exchanged since the *ex parte* motion severing contact was granted. *Id.* at 6. When J.S. cried during the interview, Tercerro documented this as evidence of psychological instability rather than normal grief. *Id.* The February 2024 FCS report to this effect justified continuing custody restrictions against Plaintiff, despite his exculpatory submissions. *Id.* at 7.

During a March 2024 trial, Toledo and Sarte allegedly perjured themselves by asserting they never accused Plaintiff of sexual abuse, despite this allegation being the basis of CPS' investigation. *Id.* at 7. Judge Distaso, meanwhile, would admit for the first time in six months that no sexual abuse occurred. *Id.* Because such misrepresentations had led to the unconstitutional separation of Plaintiff from his daughter, he sought the unredacted CPS investigation file so he could confront those who initiated the false allegations against him. *Id.* at 7-8. The Complaint alleges that providing him with only a redacted copy violated his right to confront and hold accountable his accusers. *Id.* at 8.

4

The Complaint alleges that Judge Distaso conducted a sealed Zoom interview of J.S. on April 2, 2024. *Id.* at 8.  Judge Distaso denied Plaintiff access to the video recording of the interview, and Plaintiff did not receive a transcript until after final judgment. *Id.* at 8.  Said transcript does not indicate that Judge Distaso ever asked J.S. if she wants to see her father. *Id.*

On April 19, 2024, Judge Distaso ruled that Sarte would have sole custody of J.S., that Plaintiff would have no visitation rights, and that he could only request modification of such rights after six months of therapy focusing on emotional boundaries. *Id.* at 92.  After Plaintiff appealed Judge Distaso's decision, Plaintiff filed a timely Objection to the Proposed Settled Statement on Appeal. *Id.* at 10, 141.  The Objection outlined the history of inaccuracies and misrepresentations throughout the court's version of the appellate record, the suppression of exculpatory evidence, the sealing of the Zoom hearing transcript, the fabrication of material facts by Judge Distaso and other state officials, and systemic judicial bias. *Id.* at 10, 142-69.  Judge Distaso overruled the Objection, certified the record, and recused himself on September 6, 2024. *Id.* at 9.

On April 2, 2025, Plaintiff delivered oral argument before the appellate court following denial of his request to prerecord his oral argument. *Id.*  The appellate court upheld Judge Distaso's decision, despite the lack of opposition and without any reference to the closure of the CPS investigation or the fact that it rendered Judge Distaso's basis for separating Plaintiff and J.S. false. *Id.* at 8, 87-112.  Nor did the appellate court address Plaintiff's due process claims arising from Judge Distaso's handling of the case. *Id.* at 8-9.  It concluded that Judge Distaso's decision to recuse himself in September 2024 did not indicate that he was biased. *Id.* at 9.

**B.  <u>Causes of Action and Remedies</u>**

The Complaint asserts that Tercerro's initial removal of J.S. from Plaintiff's custody was an unreasonable seizure under the Fourth Amendment, one that caused psychological and emotional distress. *Id.* at 14.  It then asserts a claim against all Defendants for Fourteenth Amendment due process violations stemming from, among other things, terminating contact with his daughter without a fair hearing and denying his request to pre-record his appellate oral argument. *Id.* at 11-12.  A separate Fourteenth Amendment claim asserts that by confronting J.S.

5

1    about the texts with Plaintiff, making her cry, and treating that as proof of psychological

2    dysfunction, Tercerro both violated Plaintiff's substantive due process rights and unequally

3    applied custody standards in a way that violated his equal protection rights.  *Id.* at 15-16.  Plaintiff

4    also accuses Tercerro and Judge Distaso of generally suppressing exculpatory evidence like the

5    CPS closure report, the Zoom video file for J.S.'s April 2024 interview, and supervised visit logs

6    documenting her positive interactions with Plaintiff.  *Id.* at 13-14.

7         The Complaint labels the totality of Defendants' conduct throughout litigation as a "Civil

8    Conspiracy Under § 1983" to deprive Plaintiff of constitutional rights as both a parent and a

9    litigant in adversarial proceedings.  *Id.* at 14-15.  Separately, while the Complaint acknowledges

10   that Sarte, and Toledo's perjury alone is not actionable under 42 U.S.C. § 1983, it asserts that this

11   conduct was part of a conspiracy with Allivato to unconstitutionally deprive Plaintiff of his

12   familial rights.  *Id.* at 16-17.

13        Finally, Plaintiff frames communicating with J.S. and filing complaints against court

14   officials as forms of protected speech under the First Amendment, which Toledo, Allivato, and

15   Judge Distaso retaliated against by escalating efforts to terminate his parental rights.  *Id.* at 12-13.

16        Based on these claims, Plaintiff seeks an order compelling CPS to release all unredacted

17   reports and files regarding the investigation against Plaintiff, injunctive relief restoring parental

18   contact and correcting custody findings, the release of all sealed court records, compensatory and

19   punitive damages, declaratory relief, and referral of Defendants' actions to federal and state

20   authorities for appropriate action.  *Id.* at 19.

21        **C.  IFP Application**

22        Plaintiff's monthly income averages $2,200 and is solely from employment at Chevron.

23   ECF No. 2 at 1-2.  Plaintiff also has a retirement account with a $14,000 balance.  *Id.* at 2.

24   Monthly expenses include $1,200 in either rent or home mortgage payments, $250 in utilities,

25   $400 in food, $40 in laundry, and $2,000 in credit card payments for a total of $3,890.  *Id.* at 4-5.

26   Plaintiff expects "major changes" to income and expenses but does not specify what, other than

27   that the "[c]ost of living is too high" and "[e]verything seems to be going up in prices."  *Id.* at 5.

28   /////

6

1              III.      ANALYSIS

2              Plaintiff's IFP application asserts that his expenses exceed his income by $1,690 per

3     month.  *See* ECF No. 2.  Although he does not provide details as to why he expects that deficit to

4     increase over time, the current deficit is sufficient to find that Plaintiff does not have the resources

5     to pay filing fees in this action.  *See* 28 U.S.C. § 1915(a)(1).  Leave to proceed *in forma pauperis*

6     is granted.

7              Upon screening the Complaint, the undersigned finds that although it may plead sufficient

8     facts to articulate a cause of action against one Defendant, other claims as against specific

9     Defendants or for specific remedies fail as a matter of law.  The Court addresses each potential

10    deficiency in turn.

11        **A.   *Rooker-Feldman***

12             Under the *Rooker-Feldman* doctrine, which federal district courts may not "review the

13    final determinations of a state court in judicial proceedings."  *Worldwide Church of God v.*

14    *McNair, et al.*, 805 F.2d 888, 890 (9th Cir. 1986).  The doctrine reflects the fact that the only

15    federal court with the jurisdiction to review state court decisions is the United States Supreme

16    Court.  *See Rooker v. Fidelity Trust Co*., 263 U.S. 413, 415-16 (1923).  Lower courts can review

17    the constitutionality of laws, but not the judgment of a state court in the application thereto in a

18    particular case.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).

19    This doctrine is analogous to *res judicata*, insofar as the district court cannot act if "there has

20    already been actual consideration of and a decision on the issue presented."  *McNair*, 805 F.2d at

21    892 (quoting *Robinson v. Ariyoshi*, 753 F.2d 1468, 1472 (9th Cir. 1985)).

22             In a supplemental memorandum submitted on May 23, 2025, Plaintiff cites *Miroth v.*

23    *Cnty. of Trinity* to assert that this court has jurisdiction over his claims despite their origins in

24    state proceedings.  ECF No. 5 at 65-68; 136 F.4th 1141 (9th Cir. 2025).  In *Miroth*, the Ninth

25    Circuit held that the *Rooker-Feldman* doctrine only bars jurisdiction over cases that complain of a

26    legal injury caused by a state court judgment, rather than by an adverse party during state court

27    proceedings.  136 F.4th at 1148 (citing *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003)).  It

28    noted that the Supreme Court had limited the doctrine to "cases brought by state-court losers

7

1    complaining of injuries caused by state-court judgments rendered before the district court

2    proceedings commenced and inviting district court review and rejection of those judgments."

3    *Miroth*, 136 F.4th at 1149 (quoting *Exxon Mobil Corporation v. Saudi Basic Industries*

4    *Corporation*, 544 U.S. 280, 284 (2005)).

5         The Ninth Circuit concluded that *Rooker-Feldman* may not preclude cases where "the

6    federal plaintiff sues an adverse party from a state court proceeding and claims that the adverse

7    party fraudulently procured the state court judgment." *Miroth*, 136 F.4th at 1150.  For example,

8    when an adverse party obtains a state court decision through forged evidence or other falsehoods,

9    a plaintiff can still seek reversal via federal suit because "[e]xtrinsic fraud on a court is, by

10   definition, not an error by that court." *Id.* (quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136,

11   1140-41 (9th Cir. 2004)).  In summary, the *Rooker-Feldman* doctrine "applies only when the

12   federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her

13   remedy relief from the state court judgment." *Miroth*, 136 F.4th at 1151 (quoting *Kougasian*, 359

14   F.3d at 1140 (emphasis original)).

15        The Complaint begins by asserting that Plaintiff "does not seek to relitigate custody" of

16   J.S., and the supplemental memorandum reiterates this argument.  ECF No. 1 at 2; ECF No. 5 at

17   65-66.  Despite this, Plaintiff expressly requests an injunction restoring parental contact and

18   correcting Judge Distaso's custody findings.  ECF No. 1 at 19.  His supplemental memorandum

19   also admits that the harm at issue includes "the continued denial of communication and custody"

20   that resulted from Judge Distaso's ruling and the appellate court's decision to uphold it.  ECF No.

21   5 at 66.  Plaintiff cannot deny that his Complaint seeks the reversal of the judgment separating

22   him from his daughter, albeit by challenging specific misconduct that occurred during state court

23   litigation.

24        The Complaint attributes at least some of the alleged misconduct to Judge Distaso

25   himself, rather than extrinsic fraud.  It lists Judge Distaso as a Defendant and targets decisions

26   that he himself made as the judge presiding over the state court proceedings.  ECF No. 1 at 1.  It

27   alleges, for example, that after CPS closed its investigation against Plaintiff in September 2023,

28   Judge Distaso asserted without evidence that a second investigation was pending.  *Id.* at 5.  He

1    removed J.S. from Plaintiff's custody in reliance on that belief, and refused to reverse the

2    separation after admitting six months later that no sexual abuse ever occurred.  *Id.* at 5, 7, 9.

3    Judge Distaso also conducted a sealed Zoom interview with J.S., where he purportedly erred by

4    never asking J.S. if she wished to see her father.  *Id.* at 8.  He then erred by denying Plaintiff

5    access to the video file for that interview.  *Id.*  The Complaint also accuses Judge Distaso of

6    denying Plaintiff the right to submit exculpatory evidence, and it asserts that he only recused

7    himself due to "the growing record of misconduct."  *Id.* at 10.

8         The Complaint does not portray Judge Distaso as passively being misled into making the

9    wrong decisions, but rather as a judge actively engaged in malfeasance, whose legal errors

10   contributed to the judgment Plaintiff now seeks to reverse.  Pursuant to the *Rooker-Feldman*

11   doctrine, Plaintiff cannot seek "injunctive relief restoring lawful parental contact, releasing sealed

12   court records, and correcting the custody findings."

13        **B.  Referral of Actions to Authorities**

14        The Complaint also requests that the Court refer various Defendant actions to state and

15   federal authorities for further action under Executive Order 13818 and California Penal Code §§

16   118 and 11172(a).  ECF No. 1 at 19.  Plaintiff cites no authority to suggest that either Executive

17   Orders or the California Penal Code provide a basis for a civil claim.  Granting the requested

18   referrals as a remedy in civil suit would in effect convert a criminal statute into a private cause of

19   action, which this court does not have the authority to do.  Plaintiff cannot seek such referral.

20        **C.  Judicial Immunity**

21        Judges are entitled to absolute immunity from actions for damages based on acts related to

22   the "judicial process."  *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2001).  This includes

23   allegations "that such action was driven by malicious or corrupt motives" or that "the exercise of

24   judicial authority is 'flawed by the commission of grave procedural errors.'"  *Id.* (citations

25   omitted); *see also Lund v. Cowan*, 5 F.4th 964, 972 (9th Cir. 2021) ("a judicial act does not stop

26   being a judicial act even if the judge acted with 'malice or corruption of motive'") (citation

27   omitted).  "If judicial immunity means anything," it cannot depend on whether a specific act was

28   "in error" or exceeded the bounds of a judge's authority.  *Mireles v. Waco*, 502 U.S. 9, 12-13

1    (1991).  Rather, "the relevant inquiry is the 'nature' and 'function' of the action, not the 'act

2    itself.'"  *Id.* at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  Further, because

3    judicial immunity "is an immunity from suit, not just from ultimate assessment of damages,"

4    allegations of bad faith or malice, including fraud, cannot supersede it.  *Mireles*, 502 U.S. at 11.

5    The Ninth Circuit has noted that although judicial independence can result in unfairness to a

6    litigant, that is precisely when "judicial immunity may be more necessary to preserve judicial

7    independence."  *Lund*, 5 F.4th at 971-72.

8        All allegations against Judge Distaso concern the judicial proceedings that led to the April

9    19, 2024, custody findings and Plaintiff's appeal thereof.  *See id.* at 92.  For example, the

10   Complaint alleges that Judge Distaso ordered Plaintiff to surrender his daughter during a

11   September 25, 2023 court hearing, purportedly based on a false assertion that a CPS investigation

12   against him was still pending.  *Id.* at 5.  This removal is the sole basis for Plaintiff's claim of an

13   unreasonable seizure under the Fourth Amendment,[1] yet it was clearly part of the overall custody

14   proceedings.  *Id.* at 14.  Judge Distaso therefore cannot be liable for his decision to separate

15   Plaintiff and J.S.

16       Judicial immunity also covers Judge Distaso's decision to not recuse himself until after

17   issuing such findings, for which Plaintiff cites *Caperton v. A.T. Massey Coal Co.*, to argue that

18   this violated Plaintiff's due process rights.  ECF No. 5 at 39-43 (citing 556 U.S. 868 (2009)).

19   *Caperton* does not addresses judicial immunity because the judge in question was not a defendant

20   in the action itself.

21       Any claims for relief cannot be based on Judge Distaso's conduct as a judge in the

22   custody proceedings for J.S.

23       **D.  Tercerro's Quasi-Judicial Immunity**

24       Non-judicial court employees have "absolute quasi-judicial immunity" from damages in

25   civil rights violations when performing tasks that are an integral part of the judicial process.

26   *Mullis v. U.S. Bankruptcy Court*, 828 F.2d 1385, 1390 (9th Cir. 1987); *Moore v. Brewster*, 96

27   _____

28   [1]  Why this cause of action identifies Tercerro as the relevant Defendant is unclear.  *See* ECF No.
     1 at 14.

F.3d 1240, 1244 (9th Cir. 1996).  This immunity also extends to those "who perform functions closely associated with the judicial process."  *In re Castillo*, 297 F.3d at 948 (quoting *Cleavinger v. Saxner,* 474 U.S. 193, 200 (1985)).

FCS is "an entity of the Superior Court," and district courts in this state have held absolute quasi-judicial immunity applies to FCS court mediators when they act in such a capacity.  *See Hutchinson v. San Diego Superior Court et al*, 2019 WL 211979 at *3-4 (S.D. Cal. Jan. 16, 2019).  Tercerro was acting in this capacity when she interviewed J.S. on January 10, 2024, and documented her findings in a February 2024 FCS report for the court.  ECF No. 1 at 6-7.  That Tercerro may have aggravated J.S. by confronting her about Plaintiff's texts is irrelevant.  ECF No. 1 at 15-16.  As with Judge Distaso, whether Tercerro erred or acted in bad faith when executing her duties does not abrogate quasi-judicial immunity for an otherwise protected act.  *See supra* III.C; *see also Mullis*, 828 F.2d at 1390 ("a mistake or an act in excess of jurisdiction does not abrogate judicial immunity, even if it results in 'grave procedural errors'").

The same logic applies to Tercerro's purported failure to act on the CPS closure report Plaintiff submitted on December 5, 2023.  ECF No. 1 at 5.  Plaintiff may argue that her quasi-judicial duties did not include ignoring the report and continuing the custody proceedings "based on knowingly false claims."  *Id.*  Any argument that the court had no other reason to proceed, or that Tercerro and the court did not weigh the closure report against other evidence when deciding the matter, is conclusory.

Any claims for relief cannot be based on Tercerro's conduct in the custody proceedings.

**E.  Allivato's Quasi-Prosecutorial Immunity**

Social workers enjoy absolute immunity when performing "quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings."  *Meyers v. Contra Costa Cnty. Dept. of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987), certiorari denied 484 U.S. 829.  Child services workers do not initiate criminal proceedings, but they are responsible for bringing dependency proceedings and must exercise a similar degree of independent judgment in determining when to do so.  *Meyers*, 812 F.2d at 1157.  Because they must make quick decisions based on incomplete information to protect possibly abused children from their parents, immunity

11

1    allows them to make such decisions without fear of a costly and time-intensive civil suit. *Id.*

2        This immunity, however, does not extend to allegations of judicial deception, where a

3    plaintiff asserts that the worker "fabricated evidence during an investigation or made false

4    statements in a dependency petition affidavit that they signed under penalty of perjury." *Rieman*

5    *v. Vazquez*, 96 F.4th 1085, 1090 (9th Cir. 2024) (quoting *Beltran v. Santa Clara Cnty.*, 514 F.3d

6    906, 908 (9th Cir. 2008)).  To adequately plead a claim for judicial deception, a plaintiff must

7    articulate "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard

8    for the truth, that was (3) material to the judicial decision." *Rieman*, 96 F.4th at 1093-94.

9    Additionally, claims of judicial deception fall under the heightened pleading standards for claims

10   of fraud under Federal Rule of Civil Procedure 9(b), and must be pled with particularity. *See*

11   *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1148 (9th Cir. 2021).

12       The Complaint alleges that Allivato lied in her November 3, 2023 treatment summary

13   regarding a supervised visit between Plaintiff and J.S. that occurred on October 26, 2023.  ECF

14   No. 1 at 6, 130-31.  Aside from Allivato not personally observing the visit,[2] she wrote that J.S.

15   was "unregulated and hysterical" during the visit and admitted to thoughts of self-harm. *Id.* at 6,

16   130.  In contrast, the Complaint states that the visit was "safe, positive, and emotionally

17   affirming." *Id.* at 6.  The Complaint further asserts that this misrepresentation led Judge Distaso

18   to grant an *ex parte* motion to sever Plaintiff's contact with J.S. *Id.*

19       Plaintiff has pled sufficient facts to find that Allivato engaged in judicial deception and is

20   therefore liable under 42 U.S.C. § 1983 for any resulting due process violations. Upon amending

21   the complaint (see *infra*), Plaintiff may include additional details regarding other instances of

22   judicial deception by Allivato or other CPS workers involved in the custody proceedings.

23       **F.   Liability of Private Actors under § 1983**

24       Plaintiff lists Toledo as a defendant in his claims for due process violations under the

25   Fourteenth Amendment, retaliation against protected speech under the First Amendment, civil

26

27   [2]  Because the report states that Allivato consulted with the "supervised visitation monitor about
     the visit," whether Allivato meant to imply that she also directly monitored the visit is unclear.
28   ECF No. 1 at 130.

conspiracy under 42 U.S.C. § 1983, and fabrication of evidence under color of law.  ECF No. 1 at 11-12, 14, 16-17.  Plaintiff also names Sarte as a defendant liable for the fabrication of evidence claim, despite not listing her as a defendant in caption or in the opening pages of the Complaint. *Id.* at 1, 3-4, 17.  The only non-conclusory allegations as to either Toledo or Sarte, however, are that they falsely accused Plaintiff of sexual abuse to trigger a CPS investigation, then perjured themselves by testifying that they never made those accusations.  *Id.* at 4, 7.

Plaintiff admits that perjury alone cannot justify a § 1983 claim against Toledo or Sarte. *Id.* at 16.  However, he argues that both the false reporting to CPS and the perjury were both part of a larger conspiracy with Allivato to deprive Plaintiff of his right to due process and separate him from J.S.  *Id.* at 16-17.

"A private individual may be liable under § 1983 if she conspired or entered joint action with a state actor."  *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).  "To prove a conspiracy between the [state] and [the private party] under § 1983, [the plaintiff] must show an agreement or meeting of the minds to violate constitutional rights."  *Id.* (cleaned up); *accord O'Handley v. Weber*, 62 F.4th 1145, 1159 (9th Cir. 2023).  "The defendants must have, 'by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage.'"  *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999).  "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants."  *Id.*  "For example, a showing that the alleged conspirators have committed acts that 'are unlikely to have been undertaken without an agreement' may allow a jury to infer the existence of a conspiracy."  *Id.*  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  *Franklin*, 312 F.3d at 441.

In *Franklin*, however, the Ninth Circuit cautioned courts that private actors should only be found liable if there was "a substantial degree of cooperation" between them and the state officials at issue.  312 F.3d at 445.  It also held that private actors can only be held liable for conduct committed by the state actor if "the private individual was the proximate cause of the violations."  *Id.* (citing *King v. Massarweh,* 782 F.2d 825, 829 (9th Cir.1986)).  Nor can courts

1    make this finding without "some showing that a private party had some control over state

2    officials' decision" to commit the act in question. *Franklin*, 312 F.3d at 446 (quoting *King*, 782

3    F.2d at 829).

4          The allegations in the Complaint fall short of pleading a plausible conspiracy to violate

5    Plaintiff's constitutional rights.  As discussed above, the only actionable allegation against

6    Allivato is that she lied in her November 2023 summary of a supervised visit between Plaintiff

7    and J.S.  *See supra* III.E; ECF No. 1 at 6, 18, 130-31.  This did contribute to Judge Distaso's

8    rulings against Plaintiff, as did the CPS investigation that Toledo and Sarte allegedly triggered.

9    The Complaint, however, does not plead any facts to suggest that the defendants communicated

10   with each other, colluded to deprive Plaintiff of his daughter, or acted to further anyone's interests

11   except their own.

12         Even the allegation that Toledo and Sarte triggered the CPS investigation through false

13   allegations is inadequately pled.  As discussed above, Federal Rule of Civil Procedure 9(b)

14   requires that any allegation of fraud be pled with particularity.  *See supra* III.E.  Plaintiff does not

15   provide any details to suggest that Toledo and Sarte were the ones that made the initial complaint,

16   or that they did so based on anything other than a sincerely held belief.  Plaintiff even admits that

17   he cannot confirm Toledo and Sarte's involvement because Judge Distaso denied him the

18   unredacted CPS investigative file.  ECF No. 1 at 8.  Both *Rooker-Feldman* and judicial immunity

19   prohibit Plaintiff from challenging such denial in this court.  *See supra* III.C-D.

20         Plaintiff has not pled sufficient facts to state a claim against Toledo or Sarte under 42

21   U.S.C. § 1983 based on conspiracy liability.  The undersigned recognizes, however, that Plaintiff

22   may be able to amend his claim to include any additional facts demonstrating collusion between

23   Toledo, Sarte, and state actors.  Leave to amend the Complaint to include such facts should be

24   granted.

25         **G.  <u>Conclusion</u>**

26         The Complaint pleads sufficient facts to state a claim against Defendant Allivato based on

27   judicial deception.  To the extent that this deception led to a deprivation of Plaintiff's due process

28   rights, Plaintiff may be entitled to monetary damages and declaratory relief under § 1983 if he

14

1   prevails in this action (so long as that declaratory relief does not seek to operate as an end-run

2   around the *Rooker-Feldman* doctrine, *see Eicherly v. O'Leary*, 721 Fed. Appx. 625, 627 (9th Cir.

3   2018)).  The Complaint does not, however, plead sufficient facts to state a claim against any other

4   Defendant, or for any claims that would entitle him to the other requested remedies.

5       A pro se litigant is entitled to notice of the deficiencies in the complaint and an

6   opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  *See*

7   *Akhtar*, 698 F.3d at 1213.  Because Tercerro and Judge Distaso enjoy judicial immunity for all

8   relevant conduct, the *Rooker-Feldman* doctrine leaves this court without jurisdiction to address

9   Judge Distaso's custody findings, and this court cannot impose criminal liability in a civil action,

10  it appears that amendment would likely be futile as to these Defendants.  *See supra* III.A-D.

11  However, rather than recommending dismissal of the action, the undersigned will provide

12  Plaintiff an opportunity to amend the Complaint to allege a proper basis for jurisdiction and facts

13  supporting a cognizable cause of action.

14      In contrast, it appears more likely that Plaintiff can plead additional facts to demonstrate

15  an actual conspiracy between Toledo, Sarte, and one or more state actors, rather than a series of

16  coincidental actions that proved adverse to Plaintiff's constitutional rights.  *See supra* III.F.

17  Plaintiff may also plead any additional facts demonstrating judicial deception by Allivato or other

18  CPS workers, despite having already adequately pled such a claim.  Leave to amend is also

19  granted as to these claims.

20              **IV.     AMENDING THE COMPLAINT**

21      If Plaintiff chooses to amend the Complaint, the amended complaint must contain a short

22  and plain statement of Plaintiff's claims.  The allegations of the complaint must be set forth in

23  sequentially numbered paragraphs, with each paragraph number being one greater than the one

24  before, each paragraph having its own number, and no paragraph number being repeated

25  anywhere in the complaint.  Each paragraph should be limited "to a single set of circumstances"

26  where possible.  Rule 10(b).  Forms are available to help plaintiffs organize their complaint in the

27  proper way.  They are available at the Clerk's Office, 501 I Street, 4th Floor (Rm. 4-200),

28  Sacramento, CA 95814, or online at www.uscourts.gov/forms/pro-se-forms.

1        The amended complaint must not force the Court or the Defendant to guess at what is

2  being alleged against whom.  *See McHenry v. Renne*, 84 F.3d 1172, 1177-80 (9th Cir. 1996)

3  (affirming dismissal of a complaint where the district court was "literally guessing as to what

4  facts support the legal claims being asserted against certain defendants").  The amended

5  complaint should contain specific allegations as to the actions of each named Defendant *and*

6  allege facts to support *each* individual claim.

7        Also, the amended complaint must not refer to a prior pleading to make Plaintiff's

8  amended complaint complete.  An amended complaint must be complete in itself without

9  reference to any prior pleading.  Local Rule 220.  This is because, as a general rule, an amended

10  complaint supersedes the original complaint.  *See Pacific Bell Tel. Co. v. Linkline*

11  *Communications, Inc.*, 555 U.S. 438, 456 n.4 (2009) ("[n]ormally, an amended complaint

12  supersedes the original complaint") (citing 6 C. Wright & A. Miller, Federal Practice &

13  Procedure § 1476, pp. 556-57 (2d ed. 1990)).  Therefore, in an amended complaint, as in an

14  original complaint, each claim and the involvement of each defendant must be sufficiently

15  alleged.

16               **V.     PRO SE PLAINTIFF SUMMARY**

17        The magistrate judge is recommending that your motion to proceed *in forma pauperis*,

18  without paying the requisite filing fees, be granted.  Upon screening your Complaint, however,

19  the undersigned finds that it is factually deficient for several reasons, including because it does

20  not plausibly show that Tracy Toledo and Lea May Sarte conspired with Yvette Allivato or are

21  otherwise liable, and what conduct Defendants Jennifer Tercero and Judge Richard Distaso

22  engaged in that is not protected by judicial or quasi-judicial immunity.  Failure to amend the

23  Complaint to address these deficiencies will result in the undersigned recommending dismissal of

24  this action as against these Defendants.  Alternatively, you may choose to voluntarily dismiss any

25  claims this Order has found deficient and proceed only on the fabrication claim against Defendant

26  Allivato.

27  ////

28  ////

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### IV.  CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's application to proceed IFP (ECF No. 2) is GRANTED;

2.  Plaintiff shall have 30 days from the date of this order to file an amended complaint that addresses the defects set forth above.  If Plaintiff fails to timely comply with this order, the undersigned will recommend that the claims be dismissed as against Defendants Toledo, Sarte, Tercerro, and Judge Distaso.  If Plaintiff files an amended complaint, the Court will screen that complaint under § 1915(e).

3.  Alternatively, if Plaintiff no longer wishes to pursue the claims that are deficient, Plaintiff may file a notice of voluntary dismissal of those claim pursuant to Rule 41 of the Federal Rules of Civil Procedure and indicate that he wishes to proceed only against Defendant Allivato on the existing Complaint.

IT IS SO ORDERED.

DATED: November 4, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

17