1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SUMITH SAMARAKOON,                      No.  2:25-cv-1271-SCR

12                 Plaintiff,

13          v.                                ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14    RICHARD DISTASO, TRACY TOLEDO,
      YVETTE ALLIVATO and JENNIFER
15    TERCERRO,

16                 Defendants.

17

18          Plaintiff is proceeding pro se in this action, which was accordingly referred to the

19    undersigned.  ECF No. 1.  Plaintiff filed a motion for leave to proceed in forma pauperis ("IFP"),

20    which was granted.  ECF No. 9 at 7.  The undersigned issued a screening order pursuant to 28

21    U.S.C. § 1915, and concluded that Plaintiff's Complaint was legally deficient as to several causes

22    of actions, against various Defendants, and for various requested remedies.  *Id.* at 7-16.  The

23    undersigned gave Plaintiff 30 days to amend the Complaint, or alternatively to voluntarily dismiss

24    the Complaint as to Defendants Tracy Toledo, Lea May Sarte, Jennifer Tercerro, and Judge

25    Richard Distaso.  *Id.* at 17.

26          Plaintiff has now filed a First Amended Complaint ("FAC") that removes Tercerro and

27    Judge Distaso as defendants but reasserts the Complaint's claims against Defendants Toledo,

28    Sarte, and Yvette Allivato.  ECF No. 10 at 5-6.  The Court now concludes that, for screening

                                              1

purposes only, Plaintiff's claims are still sufficiently cognizable as to Defendant Allivato and directs service.  However, it recommends dismissal as to Defendants Toledo and Sarte without further leave to amend.

## I.    LEGAL STANDARD

As explained in the Court's earlier screening order (ECF No. 9), the federal IFP statute requires federal courts to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  In reviewing the FAC, the Court is guided by the requirements of the Federal Rules of Civil Procedure.

Under the Federal Rules of Civil Procedure, the complaint must contain (1) a "short and plain statement" of the basis for federal jurisdiction (that is, the reason the case is filed in this court, rather than in a state court), (2) a short and plain statement showing that plaintiff is entitled to relief (that is, who harmed the plaintiff, and in what way), and (3) a demand for the relief sought.  Fed. R. Civ. P. 8(a).  Plaintiff's claims must be set forth simply, concisely and directly.  Fed. R. Civ. P. 8(d)(1).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  In reviewing a complaint under this standard, the court will (1) accept as true all factual allegations contained in the complaint, unless they are clearly baseless or fanciful, (2) construe those allegations in the light most favorable to the plaintiff, and (3) resolve all doubts in the plaintiff's favor.  *See Neitzke*, 490 U.S. at 327; *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010), *cert. denied*, 564 U.S. 1037 (2011).

The court applies the same rules of construction in determining whether the complaint states a claim on which relief can be granted.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (court must accept the allegations as true); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (court must construe the complaint in the light most favorable to the plaintiff).  Pro se pleadings are held to a less stringent standard than those drafted by lawyers.  *Erickson*, 551 U.S. at 94.  However, the court need not accept as true legal conclusions, even if cast as factual allegations.  *See Moss v.*

*U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  A formulaic recitation of the elements of a cause of action does not suffice to state a claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state a claim on which relief may be granted, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  *See Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012).

## II.    THE FIRST AMENDED COMPLAINT

### A.    Factual Allegations

The FAC alleges that Plaintiff lived with his daughter J.S. in their family home in Modesto, California before the events giving rise to this action.  ECF No. 10 at 6.  He cared for her and homeschooled her for her entire life without abuse or neglect.  *Id.*  Sarte, Plaintiff's ex-wife, retained Toledo to represent her in a custody dispute over J.S.[1]  *Id.*

On June 21, 2023, six days before child support hearings, an unlawful detainer action was filed against Plaintiff ("June 2023 UD Action").  *Id.*  Based on the timing, the FAC alleges that Toledo had instructed Sarte to file the June 2023 UD Action as a secondary method for removing Plaintiff from the home, knowing that the family court would never directly order Plaintiff to leave while J.S. was living with him.  *Id.* at 7.  This action was served by mail after the June 27 child support hearing, which highlights how eviction was a "backup strategy" for Sarte if family court failed.  *Id.*

At the June 27 hearing, Toledo argued that because Sarte was paying the mortgage on J.S.'s home, child support should be set at $0 until she moved out.  *Id.* at 8.  They also asserted

---

[1]  Latter portions of the FAC include allegations of Toledo's conduct in other cases to demonstrate that she has a pattern defrauding and betraying clients.  ECF No. 10 at 54-59.  These allegations are irrelevant to the issues presented for screening purposes.

the house was Sarte's separate property, despite Plaintiff having made the down payment in 2012

when they bought the house together.  *Id.*  Plaintiff, meanwhile, argued he was being forced out

of the house.  *Id.*  Nevertheless, the Stanislaus County Superior Court set child support at $0 per

month from May 1, 2023, with Sarte instead paying about $1,395 per month in mortgage and

utilities.  *Id.*

Minutes before the child support hearing, in the same courtroom, Sarte served Plaintiff

with a Domestic Violence Restraining Order (DVRO) petition she had filed on May 27, 2023.  *Id.*

at 8-9.  This was the first time Plaintiff knew about the petition, or that a DVRO hearing would

commence in just two hours.  *Id.* at 9.  The FAC alleges that the delay in notice was meant to

prevent Plaintiff from adequately preparing a defense or retaining counsel, despite Sarte

maintaining that personal service had been compliant with the California Code of Civil

Procedure.  *Id.*

Plaintiff raised these issues with Judge Alan Cassidy, who nevertheless proceeded with

the DVRO hearing.  *Id.* at 10.  The hearing included a break for the parties to attempt resolution,

during which Toledo "engaged in intimidating and bullying behavior" while repeating perjurious

statements from the DVRO petition.  *Id.*  Based on the timing of service and Toledo's frustration

when Judge Cassidy did not grant the requested relief, the FAC alleges that the false DVRO

petition was "a tactical maneuver rather than a genuine safety concern" designed to compel

Plaintiff to give surrender custody of J.S.  *Id.*  Judge Cassidy ultimately found service improper,

sanctioned Toledo, and continued the matter for a full trial before Judge Distaso in March 2024.

*Id.* at 11.  This trial would address economic issues, Sarte's DVRO petition, and a DVRO petition

Plaintiff had previously filed against Sarte.  *Id*.

With the DVRO petition having failed to evict Plaintiff in the interim, Toledo and Sarte

proceeded with the June 2023 UD Action.  *Id.* at 12.  Despite a different attorney appearing on

Sarte's behalf for the August 3, 2023 hearing, the FAC alleges that Toledo still helped Sarte

coordinate the June 2023 UD Action with the DVRO and child support proceedings.  *Id.*  All

three were part of an attempt to gain leverage in custody proceedings.  *Id.* at 13.

At the August 3 hearing, the Court declined to stop the eviction, despite Plaintiff arguing

1    this would cause significant harm to J.S., who had lived there her entire life. *Id.* at 14. A bailiff

2    present at this hearing later appeared at family court custody proceedings in a different

3    courthouse that were otherwise unrelated to the eviction proceedings. *Id.*

4         On August 4, 2023, one day after the eviction hearing, Defendant Allivato, Licensed

5    Marriage and Family Therapist and the reunification therapist in J.S.'s custody case, met with J.S.

6    for a court-ordered reunification therapy session. *Id.* J.S. emerged from this session crying and

7    told Plaintiff that Allivato had promised to explain why they were being evicted from the family

8    home, but never did. *Id.* Plaintiff comforted J.S. as a parent normally would, but Allivato used

9    this interaction as a pretext for false allegations to Child Protective Services ("CPS") and a way to

10   conceal her own misconduct in distressing J.S. *Id.* at 14-15.

11        Later that day, CPS officers entered Plaintiff's residence without a warrant and without

12   exigent circumstances, interrogating J.S. about allegations of sexual abuse without Plaintiff

13   present. *Id.* at 15. The FAC alleges that Plaintiff reasonably felt forced into consenting to this

14   interview. *Id.* It further alleges that the timing of this incident, just one day after the eviction,

15   demonstrates coordination among Allivato, Toledo, and Sarte. *Id.* The FAC therefore concludes

16   that these Defendants also submitted or coordinated the allegations of sexual abuse, emotional

17   harm, and other forms of mistreatment that triggered this CPS investigation. *Id.* at 16. That

18   investigation's September 13, 2023 closure report held that these allegations were unfounded, and

19   no CPS referral against Plaintiff has been filed since. *Id.*

20        At a custody hearing on September 25, 2023, Defendants suppressed the fact that the CPS

21   investigation had been closed for twelve days. *Id.* at 16-17. Based on the unfounded allegations,

22   the judge issued a custody removal order and ordered Plaintiff to surrender J.S. to the Modesto

23   Police Department without a warrant, exigent circumstances, or a finding of unfitness as a parent.

24   *Id.* at 17. Plaintiff complied with this order, but Toledo would later falsely accuse Plaintiff of

25   refusing to surrender J.S. *Id.* at 18. Toledo's lie was either deliberate or made with reckless

26   indifference, and material to restrictions of Plaintiff's parental rights in later custody orders. *Id.*

27        Plaintiff would remain separated from J.S. based on these false allegations until the March

28   2024 trial, all while Defendants suppressed the "unfounded" closure report and continued to

1    repeat the allegations as if they were credible and ongoing.  *Id.* at 40-41.  Plaintiff would also be

2    denied access to records that would have proven his innocence as to these claims.  *Id.* at 41.

3        From the September 25 hearing through November 28, 2023, J.S. and Plaintiff's only

4    communication was via secret text message.  *Id.* at 18.  In those text messages, J.S. told Plaintiff

5    that Allivato admitted to calling CPS and initiating the allegations that led to J.S.'s removal from

6    Plaintiff's custody.  *Id.*  J.S. also said she hated living in San Diego and wanted to come home.

7    *Id.* at 19.  Allivato had threatened to take J.S.'s phone away if she kept communicating with

8    Plaintiff, so J.S. had lied about what she did on her phone because she found their separation

9    unjust.  *Id.* at 19.  When Toledo discovered the messages, she immediately moved for contempt

10   against Plaintiff.  *Id.*  The FAC interprets the timing of these contempt proceedings as proof that

11   Defendants had been monitoring J.S.'s phone and let the texts accumulate to use as grounds for

12   contempt proceedings.  *Id.*

13       Plaintiff, meanwhile, filed a complaint with the Commission on Judicial Performance,

14   asserting that any order prohibiting him from communicating with his daughter violated his

15   fundamental constitutional rights under *Troxel v. Granville*, 530 U.S. 57 (2000).  *Id.* at 20-21.

16   The court never ruled on Toledo's contempt motion, possibly because doing so meant either

17   acknowledging such orders violated constitutional rights or explicitly prohibiting such protected

18   communication.  *Id.* at 20.  The FAC alleges that in any case, Toledo sought through the contempt

19   motion to:

20           a.  Weaponize normal parent-child communication as grounds for
             punishment; b. Intimidate Plaintiff from exercising his
21           constitutional right to communicate with J.S.; c. Create a record
             portraying Plaintiff as violating court orders; [and] d. Retaliate
22           against Plaintiff for maintaining contact with his daughter
             despite Defendants' efforts to completely sever the parent-child
23           relationship.

24   *Id.*

25       During Plaintiff's sole supervised visit with J.S. on October 26, 2023, she said she loved

26   him and asked when she could come home.  *Id.* at 36.  Melissa Love and Melissa Hale described

27   the visit as "safe, positive, and emotionally affirming" without signs of distress.  *Id.*  Despite

28   Allivato not being present, she falsely alleged in a November 9, 2023 treatment summary that this

6

visit traumatized and emotionally harmed J.S. *Id.* at 37. Knowingly or with reckless disregard for the truth, Allivato lied about this visit to influence court proceedings and justify permanently severing Plaintiff's contact with J.S. *Id.* at 38. Toledo filed an *ex parte* motion to that effect, and the FAC alleges that the timing of the motion further proves collusion between Toledo and Allivato. *Id.* at 38-39. The circumstances did not merit *ex parte* relief, as they were based on fabricated allegations after CPS had concluded the last set was unfounded. *Id.* at 39. The court permanently severed contact without allowing Plaintiff to cross-examine Allivato or provide the actual supervised visit log to prove she was lying. *Id.* at 39-40.

On December 5, 2023, Plaintiff arrived at the courthouse for a scheduled hearing with intent to hand-deliver exculpatory evidence in the form of a redacted copy of CPS's September 13, 2023 closure report. *Id.* at 21-22. Plaintiff was then instructed to log into the hearing virtually, therefore limiting his ability to participate. *Id.* Plaintiff handed the redacted report to Tercerro, a Family Court Services ("FCS") evaluator and the court-appointed Child Custody Mediator in Plaintiff's case. *Id.* at 22. She never acknowledged this evidence during the hearing, or otherwise recommend reunification or restoration of Plaintiff's parental rights. *Id.* During the same proceeding in which Plaintiff submitted this evidence, a male bailiff threatened Plaintiff by reaching for his firearm. *Id.* at 22-23. The FAC interprets the order to call into the hearing rather than physically attend, Tercerro's disregard of exculpatory evidence, and the bailiff's gesture as a pattern of retaliation against Plaintiff for asserting constitutional rights. *Id.* at 23. Tercerro would also continue to serve as both the FCS evaluator and Child Custody Mediator, depriving Plaintiff of an independent evaluation despite demonstrated bias against him. *Id.* at 30.

From September 2023 through April 2024, Allivato submitted various treatment summaries that the court relied on to continue separating Plaintiff and J.S. *Id.* at 23-24. Plaintiff was repeatedly denied access to these summaries, thereby requiring him to defend against accusations he could not even see. *Id.* at 24. If, for example, he had access to Allivato's treatment summary misrepresenting the October 26, 2023 supervised visit, he could have submitted Love and Hale's visit log to refute it. *Id.* at 34-35.

When Plaintiff appeared in court on February 22, 2024 to request such access, he also

1   asked what to do with the school materials he purchased for J.S. *Id.* at 29. Because J.S. was

2   homeschooled and those materials reflected her primary method of schooling, this issue directly

3   implicated Plaintiff's right to direct his child's education. *Id.* at 30. In response to Plaintiff's

4   questions about the materials and the treatment summaries, the court had Plaintiff escorted out of

5   the building by five bailiffs – including one from Plaintiff's August 2023 eviction hearing at a

6   different courthouse. *Id.* at 30-31. The FAC alleges that aside from the use of five bailiffs

7   constituting excessive force, having the same bailiff at two different courthouses demonstrates

8   that Plaintiff was being monitored and tracked across proceedings. *Id.* at 31-32.

9        The custody trial was held on March 20 and 21, 2024. *Id.* at 42. Toledo and Sarte both

10   perjured themselves by testifying that they were not the ones who filed sexual abuse allegations

11   against Plaintiff with CPS in 2023. *Id.* Based on the timing of the allegations so soon after

12   eviction proceedings, the FAC alleges that Toledo and Sarte either made or coordinated these

13   allegations. *Id.* at 42-43. The constant refusal to grant Plaintiff access to unredacted reports

14   frustrates Plaintiff's ability to prove that Toledo and Sarte were responsible, while infringing his

15   constitutional right to confront his accusers. *Id.* at 51. In any case, the trial was the first time

16   Defendants openly acknowledged that no sexual abuse had occurred, six months after CPS had

17   declared the allegations unfounded. *Id.* at 43. This acknowledgment did not reverse Plaintiff and

18   J.S.'s separation. *Id.* at 43.

19        When Plaintiff tried to submit the September 2023 closure report into evidence during the

20   trial, Judge Distaso resisted by arguing that would require submitting Allivato's treatment

21   summaries into evidence as well. *Id.* at 24-25. The court's hesitation to enter these reports

22   demonstrated to Plaintiff that the court had created an environment conducive to suppressing

23   exculpatory evidence and promoting fabricated evidence. *Id.* at 25-26. Even after Plaintiff

24   agreed to entry of both parties' evidence, the court entered Allivato's treatment summaries but not

25   the exculpatory report. *Id.* at 26-28. This demonstrates that Judge Distaso coordinated with

26   Defendants to suppress exculpatory evidence and facilitate the use of fabricated evidence against

27   him. *Id.* at 28, 36. Allivato knew that the court was relying on her treatment summaries while

28   denying Plaintiff access to them, preventing him from challenging their legitimacy, yet continued

1    to submit them and partake in denying him due process. *Id.* at 33.

2    During a recess from trial, Toledo spoke to the bailiff who restrained Plaintiff at the

3    August 2023 and February 2024 hearings, but they ended the conversation once Toledo caught

4    Plaintiff eavesdropping and recording it. *Id.* at 44. The FAC alleges that this demonstrated the

5    conversation was improper, particularly as Toledo otherwise had no legitimate reason to talk to a

6    bailiff who had been hostile towards the opposing party. *Id.* at 44-45. The FAC further alleges

7    that Toledo was coordinating with court security personnel to intimidate Plaintiff. *Id.* at 45.

8    On April 9, 2024, before the court ruled on the March 2024 trial, Toledo emailed Plaintiff

9    asserting that "You have won and I am afraid of you and my staff is afraid of you." *Id.* at 46.

10   The FAC interprets this as proof that the evidence presented at trial established Plaintiff's

11   innocence and right to custody. *Id.* at 47. Toledo then falsely asserted that Plaintiff's erratic

12   behavior had placed her and her staff "in apprehension of harm," without identifying incidents or

13   statements justifying such fear. *Id.* The language in Toledo's email mimicked the legal

14   requirements for obtaining a domestic violence restraining order under California Family Code §

15   6300. *Id.* The FAC concludes that Toledo had written this email as predicate for seeking such an

16   order. *Id.* at 48. Toledo reinforced this narrative by copying three different oversight agencies in

17   her email. *Id.* at 49.

18   Despite Toledo asserting that Plaintiff had "won," the court ruled against Plaintiff on

19   April 19, 2024. *Id.* at 47, 49. Sarte received full custody without visitation for Plaintiff, and

20   Plaintiff was required to complete six months of therapy focusing on "emotional boundaries"

21   before he could even request modification of the custody order. *Id.* at 49. The FAC alleges that

22   Toledo and court officials coordinated to deny Plaintiff relief, despite Toledo having already

23   conceded Plaintiff's victory.

24   The April 19, 2024 order continued Plaintiff and J.S.'s separation based solely on

25   Allivato's fraudulent treatment summaries and fabricated evidence, stripping him of parental

26   status in the process by labeling him a "third party." *Id.* at 26. This label also stripped Plaintiff of

27   custodial rights, denied him access to the treatment summaries and J.S.'s other records on

28   confidentiality grounds, and effectively refused to acknowledge the constitutional rights he had as

9

1  a parent. *Id.* at 27. Labeling him a third-party essentially allowed the court to strip Plaintiff of

2  his parental rights without a finding of unfitness. *Id.* at 32. The FAC alleges that Toledo had

3  coordinated with Judge Distaso and Allivato for this outcome. *Id.* at 34.

4     The Clerk's Transcript of Appeal continued to exclude CPS's closure report and other

5  exculpatory evidence in Plaintiff's favor that Judge Distaso attempted to avoid entering into the

6  trial exhibits. *Id.* at 28-29. Even after Plaintiff complained about this exclusion, only some of the

7  excluded materials were incorporated into the amended record. *Id.* at 29. The FAC frames this as

8  systemic coordination across courts to prevent Plaintiff from proving his innocence by

9  suppressing favorable evidence. *Id.*

10     B.    Assertions of Law and Causes of Action

11     The FAC includes various legal arguments. Quasi-prosecutorial immunity does not

12  extend to government social workers like Allivato when, as the FAC alleges, she deliberately lied

13  in her treatment summary and omitted material facts as to prejudice Plaintiff. *Id.* at 80-81 (citing,

14  *e.g., Hardwick v. County of Orange*, 844 F.3d 1112, 1120-1121 (9th Cir. 2017)). Toledo and

15  Sarte, meanwhile, coordinated with state actors, generated false allegations against Plaintiff, and

16  influenced state reports. ECF No. 10 at 81. The FAC alleges that this is enough to find them

17  liable under 42 U.S.C. § 1983. *Id.* at 81, 85 (citing *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)).

18     Based on the falsehoods in the treatment summaries, the FAC's first claim alleges that

19  Allivato violated Plaintiff's due process rights under the Fourteenth Amendment. ECF No. 10 at

20  82-84. The FAC then claims that under 42 U.S.C. § 1983, all three Defendants conspired to

21  "fabricate evidence, manipulate judicial processes, and interfere with Plaintiff's constitutionally

22  protected parental rights." *Id.* at 84-85. Plaintiff argues that "[t]he temporal alignment, mutually

23  reinforcing conduct, and shared use of fabricated evidence" across various proceedings was

24  "unlikely to have occurred without an agreement." *Id.* at 85-86 (citing *Franklin v. Fox*, 312 F.3d

25  423 (9th Cir. 2002)).[2]

26     Third, the FAC claims that the warrantless removal of J.S. from Plaintiff's custody on

27  ─────────────

28  [2] Although the FAC purportedly quotes *Franklin*, the cited phrase does not appear in the opinion. ECF No. 10 at 86; 312 F.3d 423.

September 25, 2023 constitutes an unreasonable seizure under the Fourth Amendment. ECF No. 10 at 88-89. CPS's warrantless entry into Plaintiff's home and interrogation of J.S., which led to the separation, was triggered by Defendants' false allegations of abuse. *Id.* Fourth, the failure to provide Plaintiff with a fair hearing before permanently separating him from J.S., including the right to present exculpatory evidence and cross-examine those who made false accusations against him, constitutes a due process violation under the Fourteenth Amendment. *Id.* at 89-91. Finally, Toledo and Sarte denied Plaintiff the right to confront his accusers by making false sexual abuse allegations, perjuring themselves about making those allegations, and frustrating Plaintiff's efforts to obtain unredacted CPS reports and prove that they lied. *Id.* at 91-93.

Based on these claims, Plaintiff seeks compensatory and punitive damages against all three Defendants (*Id.* at 95-97); declaratory relief affirming that these actions violated various constitutional rights (*Id.* at 97); declaratory relief that the relevant state agencies failed to adequately investigate these violations as to Toledo, Allivato, and the judiciary (*Id.* at 97-98); declaratory relief entitling Plaintiff to obtain unredacted CPS investigative reports (*Id.* at 98); and attorney's fees and costs (*Id.* at 98).

### III.    ANALYSIS

A.    Moot Issues and the *Rooker-Feldman* Doctrine

Plaintiff's FAC resolves some of the issues identified in the Court's earlier screening order of the initial Complaint. For example, the Court explained that Judge Distaso and Tercerro enjoy judicial and quasi-judicial immunity, respectively, for their conduct in custody proceedings for J.S. ECF No. 9 at 9-13. They are not included as Defendants in the FAC, which purports to only seek relief against "non-immune defendants whose misconduct corrupted the judicial process." ECF No. 10 at 82. The FAC also removes any request for referral of Defendants' actions to law enforcement, a remedy the Court previously explained was unavailable in this civil action. ECF No. 9 at 9.

The Court also held, however, that the *Rooker-Feldman* doctrine barred any injunctive relief for the restoration of Plaintiff's custody of J.S., the disclosure of sealed court records, or the correction of state custody findings. ECF No. 9 at 9. This doctrine prohibits federal district

1    courts from reviewing "the final determinations of a state court in judicial proceedings."

2    *Worldwide Church of God v. McNair, et al.*, 805 F.2d 888, 890 (9th Cir. 1986).

3          In *Miroth v. County of Trinity*, the Ninth Circuit held that the *Rooker-Feldman* doctrine

4    only bars jurisdiction over cases that complain of a legal injury caused by a state court judgment,

5    rather than by an adverse party during state court proceedings.  *See* 136 F.4th at 1148 (citing *Noel*

6    *v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003)).  It noted that the Supreme Court had limited the

7    doctrine to "cases brought by state-court losers complaining of injuries caused by state-court

8    judgments rendered before the district court proceedings commenced and inviting district court

9    review and rejection of those judgments."  *Miroth*, 136 F.4th at 1149 (quoting *Exxon Mobil*

10   *Corporation v. Saudi Basic Industries Corporation*, 544 U.S. 280, 284 (2005)).  The doctrine

11   does not bar district court litigation concerning state court decisions that an adverse party

12   obtained through forged evidence or other falsehoods because "[e]xtrinsic fraud on a court is, by

13   definition, not an error by that court."  *Miroth,* 136 F.4th at 1150 (quoting *Kougasian v. TMSL,*

14   *Inc.*, 359 F.3d 1136, 1140-41 (9th Cir. 2004)).  In summary, the *Rooker-Feldman* doctrine

15   "applies only when the federal plaintiff both asserts as her injury legal error or errors by the state

16   court *and* seeks as her remedy relief from the state court judgment."  *Miroth*, 136 F.4th at

17   1151 (quoting *Kougasian*, 359 F.3d at 1140 (emphasis original)).

18         Although the FAC omits most of requested relief from the Complaint that was barred by

19   the *Rooker-Feldman* doctrine, the FAC still requests a finding that Plaintiff is entitled to an

20   unredacted copy of CPS investigative reports that concerned allegations of sexual abuse.  ECF

21   No. 10 at 98.  This would effectively reverse the state court's decision to deny Plaintiff access to

22   those unredacted reports.  *See* ECF No. 10 at 51.  Nor does the FAC allege that Defendants

23   deceived the court to prevent the release of those reports.  Despite dismissing Judge Distaso as a

24   Defendant, Plaintiff accuses him of colluding with Defendants to suppress exculpatory evidence,

25   admit fabricated evidence, and deny Plaintiff access to the reports that were used against him.  *Id.*

26   at 28-29, 34, 36.  In sum, the FAC asks this Court to overrule the state court's decision to protect

27   the identity of those who apparently reported Plaintiff to CPS for alleged sexual abuse.  This

28   remedy is unavailable under the *Rooker-Feldman* doctrine and should be stricken from the FAC.

1   **B.      Conspiracy Liability under 42 U.S.C. § 1983**

2          As with the Complaint, the FAC purports to be a "civil rights action under 42 U.S.C. §

3   1983," with each claim alleging a violation of a constitutional right.  ECF No. 10 at 1, 82-93.  The

4   first claim alleges that Allivato violated Plaintiff's Fourteenth Amendment right to due process by

5   fabricating evidence to support such separation.  *Id.* at 82-84.  The second claim, "Conspiracy to

6   Violate Civils Rights," alleges violations of the First, Fourth, and Fourteenth Amendment by all

7   three Defendants that collectively led to Plaintiff and J.S.'s permanent separation.  *Id.* at 84, 87.

8   The third and fourth claims further allege that all three Defendants violated the Fourth

9   Amendment by using false allegations to prompt CPS' warrantless entry into Plaintiff's home (*id.*

10  at 88), and the Fourteenth Amendment by denying him due process before terminating his right to

11  care and custody of his daughter (*id.* at 89-90), respectively.  Finally, the fifth claim alleges that

12  Sarte and Toledo infringed his Fourteenth Amendment right to confront accusers, as part of his

13  right to due process, by denying they made the sexual abuse allegations that contributed to

14  Plaintiff and J.S.'s separation.  *Id.* at 91-92.

15         The Court previously found that claims for violations of constitutional rights may proceed

16  against Allivato, whom Plaintiff had adequately accused of judicial deception that exceeds a

17  social worker's quasi-prosecutorial immunity.  ECF No. 9 at 11-12 (citing *Rieman v. Vazquez*, 96

18  F.4th 1085, 1090 (9th Cir. 2024)); *see also* ECF No. 10 at 80-82 (reiterating that the FAC's

19  allegations against Allivato constitute judicial deception).  At issue is whether the FAC

20  adequately pleads that Toledo and Sarte conspired with Allivato, such that liability under § 1983

21  claims plausibly may extend to them even as private actors.

22         "A private individual may be liable under § 1983 if she conspired or entered joint action

23  with a state actor."  *Franklin*, 312 F.3d at 441.  "To prove a conspiracy between the [state] and

24  [the private party] under § 1983, [the plaintiff] must show an agreement or meeting of the minds

25  to violate constitutional rights."  *Id.* (cleaned up); *accord O'Handley v. Weber*, 62 F.4th 1145,

26  1159 (9th Cir. 2023).  "The defendants must have, 'by some concerted action, intend[ed] to

27  accomplish some unlawful objective for the purpose of harming another which results in

28  damage.'"  *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999).

13

1    "Such an agreement need not be overt, and may be inferred on the basis of circumstantial

2    evidence such as the actions of the defendants." *Id.* "For example, a showing that the alleged

3    conspirators have committed acts that 'are unlikely to have been undertaken without an

4    agreement' may allow a jury to infer the existence of a conspiracy." *Id.* "To be liable, each

5    participant in the conspiracy need not know the exact details of the plan, but each participant must

6    at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441.

7        The FAC largely infers coordination between Defendants based on the timing of their

8    various actions in relation to each other. *See* ECF No. 10 at 85-86. Allivato met with J.S. on

9    August 4, 2023, the day after Toledo and Sarte had succeeded in evicting Plaintiff from J.S.'s

10    childhood home, which in turn occurred after a judge had deferred ruling on the DVRO petition

11    Toledo and Sarte filed against him. *Id.* at 11-14. Allivato misrepresented her observations of

12    J.S., who was upset about losing her home, to justify allegations against Plaintiff that led to a CPS

13    investigation. *Id.* at 14-17, 86. Twelve days after the investigation was closed, Toledo used those

14    allegations to justify removing J.S. from Plaintiff's custody. *Id.* at 17-18. Toledo would later

15    move for contempt against Plaintiff for communicating with J.S. via text messages during their

16    separation, something that Allivato had warned J.S. against doing. *Id.* at 18, 20.

17        Allivato then purportedly misrepresented J.S.'s behavior during Plaintiff's October 2023

18    supervised visit. *Id.* at 36-37. Toledo cited this treatment summary in an *ex parte* motion to

19    permanently sever Plaintiff's contact with J.S., which the court granted without permitting him to

20    cross-examine Allivato or submit exculpatory evidence. *Id.* at 36-40. Allivato continued to

21    submit treatment summaries through April 2024, which Plaintiff could not access and therefore

22    could not dispute at trial. *Id.* at 23-24, 34-35. The court relied on these treatment summaries

23    even as it refused Plaintiff's attempts to submit exculpatory evidence, like the CPS closure report

24    proving that the original abuse allegations against him were unfounded. *Id.* at 26-28, 36. Toledo

25    and Sarte, meanwhile, perjured themselves by testifying that they played no role in the initial

26    allegations. *Id.* at 42-43.[3]

---

27    [3] The second claim's summary of events then discusses facts that purportedly demonstrate
collusion between Toledo, the court, and bailiffs. ECF No. 10 at 86-87. These allegations do not

28    help show Toledo to be "acting jointly with state actor Allivato," which would be necessary to

The FAC lacks the allegations needed to plausibly show that these are actions taken to further a conspiracy, rather than a combination of coincidence and causation.  Plaintiff repeatedly hinges his allegations as to the CPS investigation, for example, on the assumption that Toledo and Sarte guided Allivato to accuse Plaintiff of sexual abuse to begin with.  *Id.* at 16, 42-43.  This allegation is especially critical to the fifth claim, denial of the right to confront Plaintiff's accusers, which the FAC does not levy against Allivato.  *Id.* at 91-92.  Yet the FAC also admits that Plaintiff does not know the source of these accusations in light of redactions to the relevant reports.[4]  *Id.* at 51, 91-93.

Without a foundation for the accusation that Toledo and Sarte guided Allivato to accuse Plaintiff of sexual abuse, the only connection between Allivato's reports and Toledo and Sarte's actions is that Toledo used the reports as evidence to separate Plaintiff and J.S.  *See* ECF No. 10 at 26-28, 38-39.  This later use of the reports for litigation purposes does not plausibly show that Toledo or Sarte improperly influenced what Allivato wrote in them.  Reliance on negative reports is a normal step by opposing counsel in litigation concerning custody disputes.  That Toledo cited Allivato's reports does not plausibly suggest that Defendants conspired to ensure that those reports would support Sarte's case.

Plaintiff also effectively admits that some of Toledo's conduct at issue was justified.  The FAC frames the accumulation of texts between J.S. and Plaintiff as proof that Defendants were monitoring J.S.'s communications and allowed the texting to continue so Toledo could move for contempt.  *Id.* at 19.  If Plaintiff was barred from communicating with J.S., however, Toledo cold have easily moved for contempt as soon as she learned about any texts in that exchange.  Meanwhile, Plaintiff attempts to justify violating the order by arguing that it violated his constitutional right to communicate with his child, and that he filed a complaint with the Commission on Judicial Performance to that effect.  ECF No. 10 at 20.  This did not give him the right to violate such an order.  Toledo was within her right to seek judicial intervention the moment she discovered that J.S. and Plaintiff were texting each other, whether or not J.S. lied to

plausibly state a claim for conspiracy liability under § 1983 (ECF No. 10 at 87).

[4]  As discussed above, the Court lacks jurisdiction to issue an order reversing the state court's decision to redact the identity of Plaintiff's accuser(s).  *See supra* III.A.

1    Allivato in the process. *See id.* at 19.

2         Plaintiff has adequately alleged that Allivato misrepresented his relationship with his

3    daughter, and that Toledo used those misrepresentations to separate them from each other. He

4    has not adequately pled facts showing that Toledo and Sarte conspired with Allivato in effecting

5    such alleged deception. Plaintiff therefore has not pled sufficient facts to state a claim against

6    Toledo or Sarte under 42 U.S.C. § 1983 based on conspiracy liability. Because this is the only

7    basis for holding private citizens liable for constitutional violations, Toledo and Sarte should be

8    dismissed from all four claims raised against them in this action. As the fifth claim is not asserted

9    against Allivato, the fifth claim should be dismissed in its entirety.

10        C.    Conclusion

11        As before, the FAC pleads sufficient facts to state a claim against Defendant Allivato

12   based on judicial deception for screening purposes. To the extent that this deception led to a

13   deprivation of Plaintiff's due process rights, Plaintiff may be entitled to monetary damages and

14   declaratory relief under § 1983 if he prevails in this action (so long as that declaratory relief does

15   not seek to operate as an end-run around the *Rooker-Feldman* doctrine, *see Eicherly v. O'Leary*,

16   721 Fed. Appx. 625, 627 (9th Cir. 2018)). This screening determination does not preclude

17   Allivato from moving to dismiss any claims against her after appearing in this action.

18        The FAC does not, however, plead sufficient facts to state a claim against Defendants

19   Toledo and Sarte. Plaintiff has not plausibly shown they are state actors subject to suit under §

20   1983. All causes of action should be dismissed against them, and the fifth cause of action (which

21   is not asserted against Allivato) should be dismissed in its entirety.

22        A pro se litigant is entitled to notice of the deficiencies in the complaint and an

23   opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.

24   *See Akhtar*, 698 F.3d at 1213. The Court granted leave to amend the Complaint to allege "an

25   actual conspiracy between Toledo, Sarte, and one or more state actors, rather than a series of

26   coincidental actions that proved adverse to Plaintiff's constitutional rights." ECF No. 9 at 15. As

27   discussed above, the FAC's attempt to do so results in a more comprehensive accounting of such

28   coincidences. *See supra* III.B. It is unlikely that further amendment would yield a different

16

1  result.  Leave to amend should be denied.

2  ## IV.  CONCLUSION

3  Accordingly, **IT IS HEREBY ORDERED THAT**:

4  1.  Service of the First Amended Complaint (ECF No. 10) is appropriate for Defendant

5  Yvette Allivato;

6  2.  The Clerk of the Court is directed to issue forthwith, and, pursuant to Federal Rule of

7  Civil Procedure 4(c)(3), the U.S. Marshal is directed to serve within ninety days, all

8  process pursuant to Federal Rule of Civil Procedure 4, without prepayment of costs;

9  3.  The Clerk of the Court shall send Plaintiff the following: one USM-285, one summons, a

10  copy of the First Amended Complaint, and an appropriate form for consent to trial by a

11  magistrate judge;

12  4.  Plaintiff is directed to supply the U.S. Marshal, **within 15 days** from the date this order is

13  filed, all information needed by the Marshal to effect service of process, <u>and to promptly</u>

14  <u>file a statement with the court that said documents have been submitted to the United</u>

15  <u>States Marshal</u>.  The Court anticipates that, to effect service, the U.S. Marshal will

16  require, for each defendant in ¶ 1, above, at least:

17  a.  One completed summons;

18  b.  One completed USM-285 form;

19  c.  One copy of the endorsed filed First Amended Complaint, with an extra

20  copy for the U.S. Marshal;

21  d.  One copy of the instant order; and

22  e.  An appropriate form for consent to trial by a magistrate judge.

23  5.  In the event the U.S. Marshal is unable, for any reason whatsoever, to effect service on

24  Defendant Allivato within 90 days from the date of this order, the Marshal is directed to

25  report that fact, and the reasons for it, to the undersigned.

26  6.  The Clerk of the Court is directed to serve a copy of this order on the U.S. Marshal, 501

27  "I" Street, Sacramento, CA, 95814, Tel. No. (916) 930-2030.

28  7.  Plaintiff's failure to comply with this order may result in a recommendation that this

1    action be dismissed as to Defendant Allivato.

2    8.  Plaintiff's request for docket correction (ECF No. 6) is DENIED as moot given that the

3        supplemental memorandum that is the subject of that request was properly filed in the

4        instant action as ECF No. 5.

5    9.  The Clerk of the Court shall randomly assign a district judge to this action.

6        Moreover, **IT IS HEREBY RECOMMENDED** that: This action be DISMISSED WITH

7    PREJUDICE as to Defendants Lea May Sarte and Tracy Toledo.

8        These findings and recommendations will be submitted to the United States District Judge

9    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days

10   after being served with these findings and recommendations, plaintiff may file written objections

11   with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

12   and Recommendations."  The plaintiff is advised that failure to file objections within the specified

13   time may result in waiver of the right to appeal the District Court's order.  *Martinez v. Ylst*, 951

14   F.2d 1153 (9th Cir. 1991).

15   DATED: December 30, 2025

16

17                                        SEAN C. RIORDAN
                                         UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25

26

27

28

                                        18